We'll call our last case this morning. United States v. Mercado, number 09-2681. Mr. Narcisi and Ms. Stevens. Hang on just a couple of seconds. Better get ready. Your Honors, good morning. Lawrence Narcisi on behalf of Mr. Mercado. Your Honors, I would ask to reserve three minutes for rebuttal. That's fine. Okay, we've got him in the car on four separate occasions. Two different cars. Two different cars, and we have this telephone back and forth. Why isn't that enough? I'll admit it's weak, but why isn't that enough for a reasonable jury to infer? You've got a high bar to clear here. Judge, I stretched before I came in to do my argument. I know I'm jumping this morning. That's not the issue. But in all candor, Your Honor, in all seriousness, please, I think the issue is this. I mean, there was negotiations taking place, and he was present. And we're not quite sure if he's the one that handed over the drugs or it was the other person. I mean, he was present at the creation. He was present in the middle, and he was present at the end. We understand that mere presence doesn't do it, but there's other stuff. Right, the other stuff would seem to show, or at least would allow you to get to a jury. And there the bar is very high beyond a reasonable doubt that he was a participant. They made that finding, and for us to undo that finding is, as was said, a very high hurdle. Your Honor, this Court has already addressed this case. And my argument today before this Court is where within the spectrum of this Court's prior decisions does Mr. Mercado's action fall? And I think we, this Court most recently decided the case, I believe it was Boria, that came down after the briefs were submitted in this regard where Mr. Boria was a truck driver. I think, Your Honor, in all situations, all we have here is Mr. Mercado seated in a vehicle. We have the repeated testimony of Mr. Nunez, Rodriguez Nunez, that at no time was there any conversations with Mr. Nunez and Mr. Mercado. There was no prior contact. We have Mr. Mercado. Yes, he changed vehicles. And we have the active spectator, as this Court has, the term this Court has coined to address these issues. We have nothing further. There are cases that have been addressed. On the one extreme, we have, I believe, the Cooper decision, and then on the other hand, we have the most recent of Boria, and then we also have Ruggieros and Iafelis as cited by the government where there's more activity, there's conduct, there's speech. There is nothing in these facts as submitted to the jury. Could the jury infer that that was him on the phone? You know what, Your Honor? I argue that that inference, and I was concerned about that, that takes, that totally eviscerates the Thomas line of cases. Thomas says the jurors are not allowed to infer the substance of a conversation between individual one and individual two. Now, per your question, Your Honor, we're even taking the identity of the second individual out of the equation. So now Thomas, you're not allowed to infer what the substance is. Now you're asking the juror, you're saying, infer who the person is. And I think that that is, I don't think they can do that. I think that that totally takes Thomas out of the equation.  So I think, again, we're looking at his conduct, which was being present in the vehicle. Unfortunately, we're allowed to know drug dealers, and I'm glad that it's not criminal because in my line of work it would cause me a great amount of consternation. However, knowing a drug dealer is not in and of itself criminal conduct. Criminal liability does not attach. Knowing a drug dealer who's plying his drug dealer trade and you were part of calls that preceded the acquisition of the drugs and the selling of the drugs, he was arrested right after that, gets you to a jury. Your best argument to me, or your best chance of winning, is to say to a jury that you've got to find beyond a reasonable doubt that this person did all of these things. And here's why I suggest that you should find, or here's why I suggest that you shouldn't find, you would say. And the jury, with that high standard, found that he was a participant. How are we to say that the evidence was insufficient? I realize that he didn't say anything here, but how are we to say that we should overturn that? Just as a matter of law, it can't be. In other words, it should never have gotten to the jury is what you're really saying. Yes, sir. And I think that that was reflected in the trial judge's discussion and reflection in ruling. And my argument here this morning is that the fact that there was four times when Mr. Mercado was present, I think a nullity times four remains. Four times plus there were three phone conversations with persons who were involved, clearly involved. Between Mr. Soto, the driver of the vehicle, and my client. Correct. But then again, we're back in the line of cases. What is the substance of that conversation? And this Court has ruled that a jury may not infer what the substance of those conversations were. And I'm not going to get into the alternative inference arguments or alternative scenario arguments here, because that's, you know, not helpful in my argument. But the reality is there were conversations between my client and Mr. Soto. Obviously, my client knows Mr. Soto. They're in the car together. All right. And he also is present while conversations, negotiations are taking place. He hears the conversations. Yes. And he then goes back. I mean, you would think the ordinary person would say, you know what, I think I want out of here. This is not where I want to be. But does he come back? Yep. Does he come back after that?  Changes cars, too. Yeah. There are three separate changes of vehicles. And just to lay it out, I mean, part of the problem that I think any panel of judges is going to have is that if we said that in this case that mere presence, there was mere presence, that's not enough, the consequences of that for future cases would be, okay, as long as I keep my mouth shut, as long as I don't say anything, as long as nothing's recorded that I do say, because these phone conversations weren't recorded, guess what? I can be there. I can see that my stuff gets sold. I can be sure that everything's done according to Hoyle. And that's fine. I can't be convicted. That's a bad consequence. Your Honor, I appreciate the public policy concerns here. However, in this particular case, we have government agents observing the entire transaction. We have the government witness testifying to the whole sum and substance of the transaction so that while there may be concerns regarding a defendant's particular conduct, I believe that there are enough other law enforcement tools and techniques available to establish guilt in this particular case. Simply, you know, simply sitting passively by as something takes place in front of one, if that is the case, the government has other tools to, at its beck and call, that it may use to establish the level of involvement, the role of the individual in the particular conspiracy or whether the individual is aiding and abetting the criminal conduct. It almost looks as if after witnessing the negotiations and whatnot between Rodriguez, Nunez, and Correra Soto, and then switching cars, it almost looks as if what he's doing in the end is it's ratifying his involvement. You know, once, if he was there at the beginning, fine, and he wasn't there for the next three times. Maybe twice, maybe he wasn't there for the next two times. But he was there, as I said, from the very beginning to the very end when they were arrested. And it's a, I'm not sure, I don't understand why that shouldn't at least go to the jury, especially since you've got the standard of proof on your side. I think another factor, though, to consider, and I think would be helpful in keeping this from going to the jury, is the location. And I think this would totally undermine my argument. Per the testimony, and it's in the government's brief, that these conversations, these interactions took place on the street, barbershop, across from the Super Bowl, all very public locations, locales. No attempt to hide or secrete the conduct as it were. Oh, come on. You don't have to dispute that there was a drug transaction going on. I wouldn't waste this Court's time with that. No, sir. So you've got, it may be a public location, but there's a drug transaction going on. Absolutely. Regardless. And I'm sure right now we could go to numerous places in this city, public street corners, and find things like that going on. It would be a short cab ride, Judge. Absolutely. But my point is, in terms of the conduct, or what we're going to impute to Mr. Mercado, is, you know, if this was in an apartment or, you know, in some concealed location, then from there, there's more. Aiding and abetting, you've got to have a crime that's actually committed. You really can't dispute that. No, sir. Crime was committed. Number two, through aiding and abetting, you've got to show that the person had knowledge that the crime was going on. He's sitting there while the negotiations are going on. Not much doubt about that. Number three, you've got to show that they did something to somehow aid or join in. Some can be very innocuous. And once you do that, you've got aiding and abetting. And all he has to do is encourage. That's enough. Right? I mean, there are cases that say that. Absolutely, Your Honor. I'm in the bank, and the robbery's taking place, and I'm just there. It doesn't mean a thing. But if I start helping them in some way, you know, theoretically, even if I said, great job, boys, you know, that's all it really takes. And a jury can infer. Absolutely, Your Honor. However, the one issue is this, the court in analyzing the elements of aiding and abetting used the term they. I think my review of the statute, and I will stand corrected, is it's he. I think in this particular regard, it's he. Mr. Mercado needed to do something. It's not a they. In that regard, it's somewhat different. And we're back to my original argument here. What did Mr. Mercado do? He sat in the vehicle. And, yes, we know he was. I will agree that he's an active spectator. However, in this particular regard, to take it to the next level. I thought you meant to say passive spectator. I mean, active spectator, but it's sort of game, set, and match. That was a Freudian slip, but we'll let that one go. Some days you just work here, I know. Can I move to strike on this record, Judge? Thank you. We are back to the passive spectator that I talked about previously, Judge. So I think we have a couple of issues here. And, again, it's where we fit within the spectrum of mere presence cases that this Court has already decided. I think on the one extreme we have the most recent Court's decision, and then we have the Wexler, Cooper, Salmon, Thomas decisions, Jenkins, all of which I feel is conduct far and above Mr. Mercado's conduct. I'm out of time, Your Honor. Thank you. Thank you very much. Ms. Stevens. May it please the Court. My name is Tomika Stevens, and I represent the appellee in this action, the United States of America. Which of the two prongs, either aiding, abetting, or constructive possession, do you think is the stronger for the government? Your Honor, under either theory, the government believes that it's met its burden here. But which do you think is the stronger? Your Honor, aiding and abetting, I think, is the stronger of the two arguments. And I think it hits directly on Judge Van Antwerpen's point of what did this particular defendant do to encourage this particular drug transaction? But another way, what did he do to assist or facilitate this crime? Yes, Your Honor. And in this case, the defendant did a number of things. The government completely disagrees with defense counsel's interpretation that he did nothing but merely sit there. Simply because you may be present doesn't mean that you are not doing something in furtherance of this particular criminal activity. So what's the specific evidence that he did something above and beyond? Well, Your Honor, what we know about this case is that Mercado, the defendant, was involved with this particular transaction from the very beginning. What we have in the morning are a series of telephone calls, which initially establishes his relationship with this drug transaction. What we know is that prior to August 14th, Rodriguez-Nunez had had several conversations with Coral Soto, all related to heroin transactions. And on August 14th... Well, I suppose temporarily, you know, it raises a question, but you didn't tap him. You don't have recordings, right? No, Your Honor, we don't have recordings of those conversations. What we do know, based on Rodriguez-Nunez's testimony to the jury, was that he specifically was in contact with Coral Soto specifically for a heroin transaction deal. And he actually left a four-second voicemail message for Coral Soto at 10.09. Two minutes later, Coral Soto calls Mercado, and they have a 30-second conversation. Followed up 16 minutes later with Rodriguez-Nunez calling Coral Soto again. What the testimony shows is that Rodriguez-Nunez was calling him related to a heroin transaction. And then following that... Are we allowed to infer that under Thomas? Your Honor, under Thomas, it does say in that particular case that the jury can't infer conversations when there's no evidence that the defendant in that case was even aware that there were any illegal activities going on at that time. But that's not what we have here. Thomas is factually distinguishable here because we have a defendant, Mercado, who clearly knew what was going on in this case. He knew based on either the conversations between him and Coral Soto in the morning, but we definitely know that he knew that this was a heroin transaction when he sat in the passenger side of this car and overheard these details of this transaction on three different occasions. And it is interesting that this all happened out in the public as the defense counsel focuses on. There were about 20 or 30 people based on the testimony of the officers in this area. And this was a public area, Your Honor. But interesting enough, I think that's where these multiple cars kind of come in. They're concealing this drug deal by switching in and out of multiple cars. And the defendant had an opportunity, as this court has recognized, to completely clear himself of this drug transaction, but he chose not to do that. And by switching in and out of cars, he helps to aid in the concealment of this drug transaction. Rodriguez-Nunez actually testified. Is there any testimony to that effect? Your Honor, there is no direct testimony that the reason why they switched in and out of the cars was to conceal it, but it certainly is an inference, that the jury could make in this particular case. But what they did have direct evidence on was that Rodriguez-Nunez said that for the third meeting when the actual drugs were transferred, he said that it had to happen fairly quickly, which makes sense considering they are exchanging a large amount of heroin out in the public. But when you look at all of the evidence from the morning calls plus the transferring in and out of the two vehicles on the four different occasions, him being present during the actual conversations of the heroin deal, all of those factors really do lead to the reasonable inference that Mercado was actually encouraging that he participated in associating himself with this venture. But there's an additional fact here that I think the court should also focus on. This was not an individual, Rodriguez-Nunez, who had been involved with CoroSoto in the past. This was a first-time drug deal. A first-time drug deal involving a significant amount of drugs. The government in its brief, I admit, we underestimated exactly how much these drugs were worth. At $62 per gram for approximately 225 to 250 grams, it's closer to approximately $15,000 worth of drugs. It is a reasonable inference in this case, Your Honor, that in these circumstances, having someone else present would be important either as muscle to make sure that this drug deal goes through, particularly given the fact that Rodriguez-Nunez, he provided no money up front for this drug deal. This was a first-time transaction. So Mercado's role in this particular case, it could be that he was there for muscle. As I understand, he didn't want to go to New York to get the drugs. He wanted to get it locally, right? I'm sorry, Your Honor. He did not want to go to New York to get the drugs. Yes, Your Honor. That is his testimony that ultimately he decided he didn't want to go to New York, but he went and turned to CoroSoto to provide those drugs. And it's interesting that Mercado is present. But you look at the sequence of the calls in the morning. You've got Rodriguez-Nunez calls CoroSoto at 10.09. Then at 10.11, now CoroSoto calls Mercado. And that's the only time that anyone calls Mercado. All the other involvement of Mercado is where Mercado calls CoroSoto at 10.31, 10.39, and 11 o'clock. But never is there a call between Mercado and Rodriguez-Nunez. So, I mean, I thought what you were trying to say at one point is that he was, in effect, the go-between. But what indicates to you from those calls that somehow he was the link in the chain? Well, Your Honor, the way that I look at the calls in the morning is that it simply sets up the beginning of this drug transaction. And that the conversations that happen between Mercado and CoroSoto are sandwiched in between the previous calls with Rodriguez-Nunez and CoroSoto and then the beginning of these drug deal conversations that actually happened in person. So I certainly don't want – there's nothing in the record that says specifically – between Rodriguez-Nunez and Mercado. Absolutely nothing within the record. However, these morning calls, as I said before, really sets up the beginning of these drug transactions. And interesting enough, Your Honor, the conversation that Mercado has with CoroSoto, those two combined conversations of nearly 37 seconds, they all commence after Rodriguez-Nunez contacts CoroSoto in regards to setting up this drug deal when he chose not to go to New York and to get those drugs from CoroSoto. Those conversations don't happen until afterwards. But also, there are no conversations between Mercado and CoroSoto at all after 11 o'clock, which I believe, Your Honor, really aids to a reasonable inference as it relates to a later conversation that Rodriguez-Nunez has with the so-called owner of the drugs. Because later on in the afternoon, Rodriguez-Nunez has a conversation where CoroSoto actually puts him on with the owner of the drugs. And the owner of the drugs clearly states to Rodriguez-Nunez, it's $62 per gram, I'm not changing the price of the drugs. And what we know from the evidence is that Mercado was with Rodriguez-Nunez for the entire afternoon. From Rodriguez-Nunez's testimony to the jury, we know that he shows up at the front in Lippincott Street area at approximately 11.40. And then they have these repeat performances of showing up in the car in the exact same configuration throughout the afternoon. And what the government submits is a reasonable inference that could be drawn by the jury in this case, is that Mercado was in fact the person that was put on the phone with Rodriguez-Nunez. So while the defense counsel argues that what Mr. Mercado did here was only sit in the car, the collective evidence demonstrates that he did more than just merely being present in the car. If repeat appearances at drug transactions can take you out of the realm of mere presence, how many repeat appearances are necessary? Two? Three? Four? I mean, you know. Well, Your Honor, although it's a non-precedential opinion, this court in United States v. Easter said that presence in a car certainly can be a factor that a court can consider. So in this case, we don't just have one mere presence or one merely being present in a car. We've got four. And, Your Honor, in this case – Would three be enough? Would two be enough? Your Honor, I think – It's probably an unfair question, but – I think it depends on the facts of this case. In this case, we have so much more evidence in addition to being in the car four times. So in this particular case, it's enough. It may change depending on the facts of other cases. But we do find it of value, the decision in United States v. Easter, because of that language about presence in an automobile being very different than being present in an office building or residence for which you may have some other legitimate reason for being there. When you're present in an automobile, however, you're usually there for a specific reason. And in this case, what we know from the evidence is the only reason Rodriguez-Nunez was meeting with Coro Soto was to engage in a drug transaction. That was the sole reason Coro Soto was in that car.  Your adversary, he characterizes our Thomas decision rather broadly. Does his explanation hold water? No, Your Honor. If you look at Thomas, I mean, the crux of the Thomas decision was that the evidence was insufficient to show that Thomas knew the purpose of the illegal venture he aided. That was the crux of the Thomas decision. And in that particular case, there was evidence that there was phone records that showed several calls between Peterson's phone records showed several calls to the pager in the cellular phone that was carried by Thomas. And because there was no other evidence in the case that showed that he knew that he was getting involved with Of course, this case knowledge is we all know he knew. Yeah, he knew in that case. He completely knew in Thomas, Your Honor. But in Thomas, because he had no knowledge, all they really had was these phone records. And in that case, because they had no knowledge as to what the content of those conversations were, there simply wasn't enough for them to then make that leap of him knowing what was that this involved an illegal venture to support a finding of conviction in that case. But as the government pointed out in its brief, this case is actually an opposite to Thomas. And it's undisputed that Mercado knew that there was a drug transaction that was taking place in this particular manner. I see that my time is almost up. There's no other further questions by the court? I have no further questions. Thank you so much for your time, Your Honors. The government would ask that the decision of the lower court be affirmed in this case and deny the appellant's arguments. Thank you. Thank you. Mr. Narcissus. Your Honors, if I may just briefly. The opportunity or the obligation to leave the vehicle or to disassociate oneself, if the court were to affirm the trial court's decision, essentially will be imposing an affirmative obligation on an individual's conduct in this particular regard. Clearly, obviously, Mr. Mercado has the opportunity to conduct himself as he sees fit. However, in this particular case, to say, hey, you know what? If this is the case, you see this going on, you need to disassociate. You need to move yourself away. I submit to you that that is a broad imposition and that is a heavy burden to impose on the citizenry, particularly in situations where they find themselves living in crime-ridden neighborhoods. In addition, as far as the phone calls. But what happens is that if you have presence on a street corner standing nearby while a drug transaction is taking place, that's one thing. But here you have several hours of activity preceded by phone calls involving four times this person. And he's, it's like you inch forward, you inch forward. Clearly the phone calls won't do it. And the first meeting won't do it. Second meeting probably doesn't do it. But then the third, and then for the final, the actual transaction, the actual drugs to be handed over and the payment to be made, he's there. He's there. And so, you know, maybe you as a juror might disagree, but they didn't. They unanimously found that he was a participant in this aiding and abetting allegation. The first prong in the court's analysis regarding the phone calls as to what Mr. Mercado knew first thing in the morning when those phone calls were made, I submit is speculation. And I think that shows the rationale and the reasoning behind the Thomas Lyman decisions, because you can reach any one of a broad spectrum of inferences or conclusions regarding these conversations. But at some point you go from speculation to inferring that he was a participant. At some point the line is crossed, and for all 12 jurors, they believe that that line was crossed, and as I said before, they believed it by beyond a reasonable doubt. Who were we to interfere with that judgment with these circumstances? That the language of the statute, the jury charge all addressed that issue, and that we have mere presence from the first meeting to the fourth meeting, and we have him sitting there otherwise like a cigar store statute. But the jury didn't believe he was a cigar store statute. But I think in that regard, the jury disregarded the trial judge's instructions, Your Honor. All 12 did. I'm sorry, sir? All 12 jurors disregarded it. Your Honor, it's our contention that it would not be unprecedented. You know, sometimes you can reach a high level within that no single part of the extension matter taken by itself is enough. If you extend all of it, it can reach. I think that's what the government's saying in this case. No single factor, maybe even two factors alone aren't enough, but you take them all together and it gets you there. I believe that. Even though it's a close case, as the trial judge said here. I think this Court appreciates the struggle the trial court had. Yeah, thank you very much. Thank you to both counsel for very well presented arguments. We'll take the matter under advisement.